# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

Nº 08 Civ. 5453 (RJS)

_____

MICHAEL M. BUCHMAN,

Plaintiff,

VERSUS

MELVYN I. WEISS, DAVID J. BERSHAD, STEVEN G. SCHULMAN, and WILLIAM S. LERACH,

Defendants.

_____

Nº 08 Civ. 5456 (RJS)

_____

JOHN DOUGLAS RICHARDS,

Plaintiff,

VERSUS

MELVYN I. WEISS, STEVEN G. SCHULMAN, and WILLIAM S. LERACH,

Defendants.

_____

MEMORANDUM AND ORDER
July 14, 2009

_____

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Michael M. Buchman and John Douglas Richards[1] bring suit against Melvyn I. Weiss, David J. Bershad[2], Steven G. Schulman, and William S. Lerach, alleging state law claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, fraud, and unjust enrichment. Defendants now move to dismiss the complaints for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and to compel arbitration on the ground that Plaintiffs' claims are subject to an enforceable arbitration clause. For the reasons set forth below, Defendants' motions are granted, and the parties are directed to proceed to arbitration.

## I. BACKGROUND

### A. Facts

The following facts are taken from the Complaints; the Court will recite only those facts necessary to resolve the instant motions. The Court assumes these facts to be true for the purpose of deciding the instant motions. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

### 1. The Parties

Plaintiff Buchman is a licensed attorney and formerly a member of the Milberg law firm.[3] (Buchman Compl. ¶ 1.) He joined the Firm as an associate in January of 1997, and was a partner in the Firm from December 2000 until February 2007, when he withdrew from Milberg. (*Id.* ¶¶ 1, 14, 29.) Plaintiff Richards is also a licensed attorney and formerly a member of Milberg. (Richards Compl. ¶ 1.) From June 2000 until January 2007, he was a partner in the Firm. (*Id.*) In January of 2007, Plaintiff Richards withdrew from Milberg. (*Id.* ¶ 26.)

Defendants are all former attorneys and partners in Milberg. (Buchman Compl. ¶¶ 2-5; Richards Compl. ¶¶ 2-4.) They each pleaded guilty to a felony in connection with the events described below, and were subsequently disbarred. (Buchman Compl. ¶¶ 2-5; Richards Compl. ¶¶ 2-4.) Defendant Weiss resigned from the Firm in 2008. (Buchman Compl. ¶ 2; Richards Compl. ¶ 2.) Defendant Bershad resigned from Milberg in 2007. (Buchman Compl. ¶ 3.) Defendant Schulman resigned in 2006, and Defendant Lerach resigned in 2004. (Buchman Compl. ¶¶ 4-5; Richards Compl. ¶¶ 3-4.)

### 2. The Events Leading to the Instant Suits

Milberg is a law firm specializing in the representation of plaintiffs in class action

---

[1] The above-captioned actions have not been consolidated, but, as the Complaints allege the same claims, Defendants' motions to dismiss in the two actions are substantively identical, and Plaintiffs have submitted a joint memorandum of law in opposition to the motions, the Court will render its decision on both motions together.

[2] Defendant Bershad is named as a defendant only in the *Buchman* action; otherwise the named Defendants in the two actions are identical.

---

[3] The firm was known by various names, including Milberg Weiss Bershad Hynes and Lerach LLP and Milberg Weiss Bershad & Schulman LLP, over the course of the time relevant to the instant actions. (Buchman Compl. ¶ 1.) For the purposes of this motion the Court will refer to the firm simply as "Milberg " or "the Firm."

lawsuits. (*See* Buchman Compl. ¶¶ 13, 15; Richards Compl. ¶¶ 7, 10, 14.) The firm is structured as a partnership governed by a partnership agreement ("the Agreement"), to which all partners are signatories. (Decl. of Jeffrey S. Grand, Ex. 1 (Agreement) § 11.04.)

On June 23, 2005, the United States government unsealed an indictment alleging that certain Milberg partners had illegally paid individuals to serve as plaintiffs in class action lawsuits. (Buchman Compl. ¶ 16; Richards Compl. ¶ 14.) Despite the allegations in the indictment, Defendants Weiss, Bershad, and Schulman assured other Milberg partners that any accusations of illegal conduct were baseless. (Buchman Compl. ¶ 17; Richards Compl. ¶ 15.) During the summer of 2005, at the direction of Defendants, a memorandum was prepared and submitted to the government in which Defendants falsely represented that Milberg had not made payments to individuals in order to induce their participation as representative plaintiffs in class action suits. (Buchman Compl. ¶ 20; Richards Compl. ¶ 17.) In May 2006, the government indicted Defendants Bershad and Schulman, as well as the Firm itself, for making secret payments to representative plaintiffs. (Buchman Compl. ¶¶ 22-23; Richards Compl. ¶ 19.) As a result of the firm's indictment and its attendant impact on Plaintiffs' practices, both Plaintiffs resigned from the Firm. (Buchman Compl. ¶ 29; Richards Compl. ¶ 26.) Subsequent to Plaintiffs' withdrawal from Milberg, each Defendant pleaded guilty to participating in a scheme to make illegal payments to representative plaintiffs. (Buchman Compl. ¶ 30; Richards Compl. ¶ 27.)

### B. Procedural History

Plaintiffs commenced their respective actions on June 17, 2008. Defendants'

motions to dismiss were filed on October 10, 2008, and the motions were fully submitted on November 7, 2008. Oral argument was held on June 16, 2009.

### II. DISCUSSION

Defendants move to dismiss the complaints and to compel arbitration, arguing that the Agreement the parties executed contains a broad arbitration clause (the "Arbitration Clause"). (Defs.' Mem.[4] at 1-3; Defs.' Reply Mem. at 1.) Defendants contend that the claims asserted here are covered by the Arbitration Clause and that this Court thus lacks subject matter jurisdiction to adjudicate Plaintiffs' claims. (Defs.' Mem. at 1.)

Plaintiffs raise several arguments in opposition to Defendants' motions. First, Plaintiffs argue that they, in their capacities as individual partners, are not "intended parties" to the Agreement, and that the Arbitration Clause was intended only to govern claims brought against the Partnership, not claims brought between individual Milberg partners. In support of this contention Plaintiffs cite, and urge the Court to consider as binding, statements made by Defendants Bershad, Weiss, and Schulman in a state court suit that the Agreement is not applicable to such claims. (Pls.' Opp'n at 3-12.) Second, Plaintiffs argue that, even were the Arbitration Clause intended to apply to claims between individual partners, the claims at issue here — tort claims involving no questions of contract interpretation — are not covered by the

---

[4] Defendants have filed substantially identical memoranda of law in the *Buchman* and *Richards* actions. For reasons of expediency, the Court will include citations to only one of the memoranda; accordingly, citations to "Defs.' Mem." and "Defs.' Reply Mem." will be to the memoranda filed in the *Buchman* action.

Agreement. (*Id.* at 12-15.) Finally, Plaintiffs argue that "wholly unforeseen" torts such as the instant claims were not contemplated or reasonably expected by the parties when they entered into the Agreement, and that accordingly they do not fall within the scope of the Arbitration Clause. (*Id.* at 15-20.)

## A. Standard of Review

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction made prior to discovery, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison*, 547 F.3d at 170 (internal quotations and citations omitted). In considering such a motion, the Court may refer to materials outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## B. Arbitrability of the Claims

### 1. Applicable Law

The parties do not dispute that the Agreement is a contract affecting interstate commerce, and therefore is subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (Defs.' Mem. at 2-3; Pls.' Opp'n (applying the FAA)); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75 (2d Cir. 1998); *Chaitman v. Wolf Haldenstein Adler Freeman & Herz LLP*, No. 03 Civ. 929 (RCC), 2004 WL 2471372, at *3-5 (S.D.N.Y. Nov. 30, 2004) (applying the FAA to a partnership agreement with an arbitration clause).

Nevertheless, whether a particular dispute is subject to arbitration turns on "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). The threshold issue regarding the existence of an agreement to arbitrate is decided by reference to state contract law. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (noting that the FAA "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate" (internal quotations and citations omitted)).

However, once it is determined that an agreement to arbitrate exists, interpretation of the scope of the arbitration clause is governed by the FAA. It is by now axiomatic that the FAA embodies the "strong federal policy . . . favoring arbitration." *Oldroyd*, 134 F.3d at 76. In light of that policy, courts must "construe arbitration clauses as broadly as possible," *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal citations and quotations omitted), and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In order to determine whether a particular dispute falls within the scope of a given arbitration clause:

> a court should classify the particular clause as either broad or narrow . . . . Where the arbitration clause is

4

narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (internal quotations and citations omitted).

### 2. Analysis

#### a. Existence of a Valid Agreement

As a preliminary matter, the Court rejects Plaintiffs' contention that "individual partners" are not "intended parties" to the Agreement, and that there exists no valid agreement to arbitrate Plaintiffs' claims. Under New York law, an agreement to arbitrate need only be proven by a preponderance of the evidence. *Progressive*, 991 F.2d at 46.[5]   The Agreement, which Plaintiffs do not dispute executing, makes explicit that the individual Milberg partners are the parties to the contract. (*See* Agmt. § 1.02 (stating that "all of the parties [to the Agreement] shall be partners in the Partnership"); *id.* at 1 (describing the Agreement as a "PARTNERSHIP AGREEMENT for the practice of law made . . . among those persons whose names are set forth on the signature pages hereof"); *id.* (stating that "[t]he parties have heretofore engaged in the practice of law as a partnership").)  Indeed, the Agreement states clearly that it is "binding upon and inure[s] to the benefit of the Partners and the Partnership." (*Id.* § 11.03.)

*Gould v. Berk & Michaels, P.C.*, No. 89 Civ. 5036 (SWK), 1990 WL 41706 (S.D.N.Y. Apr. 5, 1990), on which Plaintiffs rely in support of their argument, does not counsel a different result.  There, the plaintiffs had relationships with the defendants in two distinct capacities: as partners in an arbitrage partnership in which the plaintiffs invested on the advice of the defendants, and as clients of the defendants' accounting firm. *Id.* at *3-4. In holding that the arbitration clause in the partnership agreement did not compel arbitration of claims asserted against the defendants in their "accountancy capacity," the Honorable Shirley Wohl Kram, District Judge, noted that "[t]he signatories to the partnership agreement clearly delineated the capacities in which they were signing, *i.e.*, as 'Managing Partners.' If these parties intended

---

[5] Plaintiffs argue that Defendants must show that the agreement to arbitrate is "express, direct, and unequivocal." (Pls.' Opp'n at 10-11; *see also id.* at 11 n.8.) Plaintiffs, however, are mistaken. While it is true that New York law provides that "parties will not be held to have chosen arbitration in the absence of an express, unequivocal agreement to that effect," New York law also "requires that nonarbitration agreements be proven only by a mere preponderance of the evidence." *Progressive*, 991 F.2d at 46 (internal quotations and citations omitted).  Seizing on this distinction between arbitration and nonarbitration agreements, the Second Circuit has held that the Supreme Court decision in *Perry v. Thomas*, 482 U.S. 483 (1987) "prohibits such discriminatory treatment of arbitration agreements . . . in determining whether the parties have agreed to arbitrate." *Progressive*, 991 F.2d at 46.  Accordingly, in determining the existence of an arbitration agreement, "we apply the ordinary preponderance of the evidence standard." *Id.*

for the accounting firm to be covered by the arbitration clause . . . they could have provided a signature line for the firm . . . ." *Id.* at *4. There is no dual relationship between the parties here, and, further, the above-cited language of the Agreement makes clear the capacity in which the parties were contracting. The Agreement, including the Arbitration Clause, by its plain terms is thus a contract among the individual partners of Milberg, and thus governs claims between individual partners.

Plaintiffs also argue that Defendants are barred from asserting that the Arbitration Clause is applicable here by virtue of Defendants advancing a contrary interpretation in separate proceedings in New York state court. (*See* Pls.' Opp'n at 3-6). Specifically, Plaintiffs contend that Defendants' previously-articulated position that (1) "[t]here is nothing in the Partnership Agreement that contemplates an action by one partner against another partner," and (2) the Agreement's "intent . . . is to regulate the distribution of firm proceeds, not to expose its partners to claims from other partners," constitutes a "judicial admission" as to the non-arbitrability of the instant claims. (Pls.' Opp'n at 4-7.) This contention is also unavailing. It is well settled that "judicial admissions are 'statements of fact rather than legal arguments made to a court.'" *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005) (quoting *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n. 7 (2d Cir. 1998). As a consequence, parties' "statements of their theory of the case do not constitute judicial admissions." *Terry*, 159 F.3d at 97 n.7. The above-quoted statements, as well as the other statements

quoted in Plaintiffs' memorandum, represent Defendants' theory of interpretation of the language of the Agreement rather than factual statements, and, as such, are not judicial admissions. *See, e.g.*, *Schreiber*, 407 F.3d at 45.

The Court thus finds that Plaintiffs are parties to the Agreement and the Arbitration Clause in their capacity as individual partners asserting claims against other individual partners, and thus that "there exists a valid agreement to arbitrate . . . under the contract in question." *Nat'l Union Fire Ins.*, 88 F.3d at 135.

### b. Scope of the Arbitration Clause

Having determined that there exists a valid contract to arbitrate, the Court must next determine whether the claims alleged fall within the scope of the Arbitration Clause. The Court also rejects Plaintiffs' argument that the claims at issue are not intended to be covered by the Arbitration Clause.

The Arbitration Clause provides for the arbitration of "[a]ll disputes, disagreements and claims arising out of, under or in connection with this Agreement . . . ." (Agmt. § 11.01.) The Second Circuit has found similarly-worded arbitration clauses to be broad clauses meriting the presumption of arbitrability. *See Oldroyd*, 134 F.3d at 76 (deeming a clause requiring the arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" the agreement at issue to be a "prototypical broad arbitration provision," and holding that such a clause is "precisely the kind of . . . clause that justifies a presumption of arbitrability"); *see also Collins & Aikman*, 58 F.3d at 20 (holding that

a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause" (alterations in original)). Accordingly, the Arbitration Clause at issue here is a broad one, and Plaintiffs' claims presumptively fall within its scope.

Nothing before the Court rebuts this presumption. In assessing the arbitrability of Plaintiffs' claims, the Court is mindful that when "determining whether a particular claim falls within the scope of the parties' arbitration agreement," it must "focus on the factual allegations in the complaint rather than the legal causes of action asserted," and that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute*." *Oldroyd*, 134 F.3d at 76 (emphasis added) (internal quotations and citations omitted). Thus, "*[i]f the allegations underlying the claims touch matters covered by the parties' . . . agreements*, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (emphasis and alterations in original) (internal quotations and citations omitted).

The Agreement here purports to make arrangements for "the continuation, management, operation and the sharing of profits and losses of and the admission of new partners to the Partnership and as to matters relating to the death, withdrawal, or disability of partners" (Agmt. at 1), as well as to bestow on the Managing Partners, including Defendants, the authority to make:

all decisions relating to or affecting the management, business, affairs, operations and policies of the Partnership (including, by way of illustration only, determination of income items, profit and loss participations, Drawings, initial and further contributions to and withdrawals from capital, timing and amounts of bank and other loans to the Partnership and of distributions to Partners from income or capital, replenishment or increase of capital, advances and expense allowances to Partners and repayment thereof and of indebtedness to the Partnership, increases in the number of the Managing Partners, admission of New Partners and the terms and conditions of such admission, requiring the compulsory withdrawal of a Partner . . . change the name of the Partnership, merger or dissolution of the Partnership, banking arrangements and authorizations, client disbursements, vacations, office locations, leases, equipment and supply purchases and the control, employment, compensation, and discharge of employees) . . . .

(*Id.* § 3.01). In short, the Agreement's terms purport to comprehensively regulate every facet of the Firm's operation and administration, as well as the relationship between Milberg partners and the Firm.

In light of the expansive terms of the Agreement, the Court cannot say with "positive assurance" that the Arbitration Clause is "not susceptible of an interpretation that" Plaintiffs' claims are covered. *Oldroyd*,

134 F.3d at 76.  Plaintiffs, relying on *Collins & Aikman*, 58 F.3d at 23, argue that the claims do not involve construction of the contract or the rights and obligations of the parties thereunder.  (*See* Oral Arg. Tr. at 23:22-24:9.)  The asserted claims, however, appear to fall squarely within the ambit of the Arbitration Clause.  Plaintiffs' breach of fiduciary duty and aiding and abetting breaches of fiduciary duty claims are based on Defendants' "fiduciary duty to Plaintiff[s], as their *law partner[s]*" (Buchman Compl. ¶ 15 (emphasis added); *see also* Richards Compl. ¶¶ 17-19, 32) — a fiduciary duty arising directly from the relationship created by the Agreement.  Plaintiffs' fraud and unjust enrichment claims pertain to Defendants' "willful misconduct" in the course of their "professional activities," and the distribution of the financial fruits thereof.  (Buchman Compl. ¶¶ 16, 46; Richards Compl. ¶¶ 14, 43.)  These allegations, all of which go to the question of whether Defendants improperly conducted the business of the Firm and, as a result, violated duties owed to Plaintiffs under the Agreement, clearly present a question of the rights and obligations of the parties under the Agreement.

Plaintiffs cite *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983), and *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995), in support of their argument that the claims at issue here are not arbitrable.  (*See* Oral Arg. Tr. at 24:20-26:13.)  Those cases, however, are inapposite.  The holding in *Coudert*, that certain defamation claims were not subject to the arbitration clause contained in the plaintiff's arbitration agreement providing for arbitration of all disputes arising out of employment or termination, turned on the fact

that "only grievances based on conditions arising *during the term of the agreement to arbitrate* are arbitrable after the term has ended."  705 F.2d at 81 (internal quotations and citations omitted) (emphasis in original).  The claims here, in contrast, undisputably arose during the term of the Agreement.  Similarly, in *Leadertex*, the Second Circuit found not arbitrable certain defamation claims based on statements not relating to the subject matter of the contract between the parties.  67 F.3d at 28-29.  Here, the claims go directly to the subject matter of the contract — namely, the partnership between the parties and the duties created as a result.  Given that the Agreement vests in the Defendants the broad power to make "all decisions relating to or affecting the management, business, affairs, operations and policies" of the Firm, including "client disbursements" (Agmt. § 3.01), the complained-of conduct is clearly within the subject matter covered by the Agreement, and, thus, by the Arbitration Clause.

c.  "Wholly Unexpected" Conduct

Plaintiffs finally argue that the misconduct at issue here — engaging in an unlawful practice of making payments to class representatives, as well as Defendants' subsequent concealment of their misconduct when the government began investigating the unlawful payments — is "so extraordinary that it cannot reasonably be said to have been in contemplation at the time of contracting," and thus falls outside the scope of the Arbitration Clause. (Pls.' Opp'n at 15.)  For the reasons that follow, this argument is likewise unavailing.

It is well settled that the Court's "main concern in deciding the scope of arbitration agreements is to faithfully reflect[] the reasonable expectations of those who commit themselves to be bound by [them]." *Leadertex,* 67 F.3d at 28.  The plain language of the Agreement makes clear that the parties bound by the Agreement reasonably expected that circumstances might arise in which a partner had engaged in illegal or unethical conduct.  Specifically, the Agreement provides for the compulsory withdrawal of a partner by decision of the Managing Partners, and defines "compulsory withdrawal for cause" as:

> compulsory withdrawal for any of the following reasons . . . to wit, (i) suspension or revocation of his or her license to practice law; (ii) breach of professional ethics adjudicated by a Court or Bar Association having jurisdiction thereof; (iii) conversion or embezzlement of Partnership or client funds; or (iv) a written determination by two-thirds of the Equity Partners that specific acts or conduct by a Partner have had or are likely to have a material adverse effect on the Partnership or its reputation.

(Agmt. § 6.01(b).)  The Agreement further defines the rights of a partner compulsorily terminated for cause under the Agreement. (*See, e.g.*, *id.* § 6.05(a).)  To argue that the parties inserted provisions in the Agreement for misconduct-related contingencies, but that the parties never "reasonably contemplated" such contingencies, is nothing short of illogical.

In this respect the instant situation is distinguishable from that in *Fuller v. Guthrie*, 565 F.2d 259 (2d Cir. 1977), on which Plaintiffs rely.  There, the Second Circuit affirmed a decision that a contract calling for the arbitration of all disputes "involving the musical services arising out of or connected with" the contract did not compel arbitration of the plaintiff's slander claim, holding that "it would stretch the meaning of 'musical services' beyond any reasonable definition to suggest that the slander claim falls within it." *Fuller*, 565 F.2d at 261.

Here, in contrast, although the Agreement does not reference the *specific* type of misconduct in which Defendants engaged — namely, making illegal payments to class representatives and lying about it to authorities — it is plain that the Agreement contemplated that partners in the Firm might engage in *some* sort of ethical or criminal misconduct and that procedures to deal with such misconduct would be necessary.  (*See* Agmt. §§ 6.01(b), 6.05(a).)   Unlike in *Guthrie*, no "stretching" of the term "breach of professional ethics" is required to encompass Defendants' misconduct.

Plaintiffs' claim that misconduct of the sort in which Defendants engaged "cannot in fairness be considered to have been in contemplation by Plaintiffs, when they entered into their agreement to arbitrate" (Pls.' Opp'n at 18) is belied by the clear language of the Agreement.  Accordingly, the Court finds that the arbitration of claims such as those here was within the "reasonable expectations" of the parties to the Arbitration Clause, and that those claims are within the scope of the Arbitration Clause.

### C. Dismissal

Having concluded that Plaintiffs' claims are subject to arbitration, it remains to be determined whether the Court should stay the above-captioned actions pending arbitration, pursuant to 9 U.S.C. § 3, or dismiss the actions for want of subject-matter jurisdiction. Defendants have moved for dismissal, while Plaintiffs have not asserted a position as to their preference.

The decision to stay the actions or dismiss them is within the Court's discretion. *Douce v. Origin ID TMAA 1404-236-5547*, No. 08 Civ. 483 (DLC), 2009 WL 382708, at \*4 (S.D.N.Y. Feb. 17, 2009). "[W]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (citing *Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475 (GBD) (GWG), 2007 WL 521295, at \*4 (S.D.N.Y. Feb. 21, 2007). "Thus, where defendants have sought dismissal rather than a stay, courts in this district have granted dismissal." *Id.* (internal quotations and citations omitted). Accordingly, the Court will dismiss the actions.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions are granted, the above-captioned actions are dismissed, and the parties are directed to proceed to arbitration. The Clerk of the Court is respectfully directed to close both cases.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: July 14, 2009
New York, New York

\*\*\*

Plaintiffs Michael M. Buchman and John Douglas Richards appear *pro se.* Defendant Melvyn I. Weiss is represented by Christopher M. Van de Kieft and Diogenes P. Kekatos, Seeger Weiss LLP, One William Street, New York, NY 10004. Defendant David J. Bershad is represented by Jamie S. Gardner and Robert D. Luskin, Patton Boggs LLP, 1185 Avenue of the Americas 30th Floor, New York, NY 10036. Defendant Steven G. Schulman is represented by Peter M. Ripin, Davidoff Malito & Hutcher LLP, 605 Third Avenue, 34th Floor, New York, NY 10158. Defendant William S. Lerach is represented by Steven G. Kobre and Danielle L. Rose, Kobre & Kim LLP, 800 Third Avenue, New York, NY 10022.

10